UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80682-CIV-MIDDLEBROOKS/JOHNSON

UNITED BULLY KENNEL CLUB, INC.,

              Plaintiff,

v.

AMERICAN BULLY KENNEL
CLUB, INC.,

              Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

       THIS CAUSE is before the Court upon Defendant's Motion to Dismiss for Lack of

Personal Jurisdiction Plaintiff's Amended Complaint ("Motion") (DE 21), filed July 15, 2011.

American filed a Response to the instant Motion (DE 23), and United filed a Reply (DE 28).  I

have reviewed the instant Motion, Response, and Reply and am otherwise fully advised on the

premises.

## I. Background

       Plaintiff, United Bully Kennel Club, Inc., ("United") is a Florida corporation that owns

and operates a multi-breed dog registry, which provides the public with information about

various breeds of dogs, including the breed commonly known as the American Bully. (DE 7 ¶¶

8-9). United describes the American Bully as a breed that originated "from crosses of the Pit Bull

with various other breeds, such as the American Bull Dog and the Pug, to name a few, and has

been bred for a different purpose and look." (DE 13 at 2). United alleges that the breed has been

1

widely recognized for the past fifteen years and claims "American Bully is a descriptive term that describes a breed of dog and does not have a distinctive or secondary meaning." (DE 7 ¶ 23).

Since around September 10, 2010, Defendant, American Bully Kennel Club, Inc., ("American") a Virginia limited liability company, whose members are not Florida citizens, has also operated a multi-breed dog registry that registers the American Bully breed. (DE 7 ¶¶ 9; 24). American is the successor in interest to American Bully Kennel Club, Inc., a California corporation that was established in 2004. (DE 23 at 2).

On June 1, 2011, American's counsel sent United a cease and desist letter claiming that American "is the owner of the common law certification mark American Bully, under 15 U.S.C. § 1054 and § 1125" and demanding United cease registering dogs as American Bullies because United's activities violate and devalue American's certification mark. (DE 7 Exhibit A at 1). Also, in the cease and desist letter, American alleges United committed copyright infringement, and violated 17 U.S.C. § 501, when it copied American's "standard for the American Bully breed . . . word for word without permission from" American and placed this plagiarized breed standard on United's website. (DE 7 Exhibit A at 2). Finally, American accused United of fraudulently filing for a trademark, because American alleged United knew that American was the first company to create the American Bully breed and American had already filed for the same trademark. (DE 7 Exhibit A at 2-3). American ordered United to cancel United's pending application for trademark. (DE 7 Exhibit A at 2-3).

On June 10, 2011, United filed a Complaint against American, and on June 20, 2011, United filed an Amended Complaint. (DE 7). United's Amended Complaint seeks the following: (1) a declaratory judgment of non-infringement pursuant to federal law ("Claim One") (DE 7 at 5); (2) a declaratory judgment of non-infringement pursuant to Florida law ("Claim Two") (DE 7

at 9); and (3) a request for injunctive relief ("Claim Three") (DE 7 at 13). In its Amended

Complaint, United asserts this Court has personal jurisdiction over American because American

is

> [T]ransacting business in the Southern District of Florida and throughout Florida,
> by, among other things, issuing registration certificates to owners of dogs who are
> citizens and residents of the Southern District of Florida, and by offering to issue
> such certificates through an interactive website accessible in the Southern District
> of Florida. The website solicits business from citizens and residents of the
> Southern District of Florida. The Defendant expects its acts to have consequences
> in the Southern District of Florida, and it derives substantial revenue from
> interstate commerce.

(DE 7 ¶ 6).

In its Amended Complaint, United alleges that American told United's website provider

that United was infringing on American's intellectual property rights and demanded that

United's website be shutdown. (DE 7 ¶ 21).  United states that its website provider shut down its

website on June 21, 2011. (DE 23 at 4). Also, United claims that American has been "telling the

public, the dog breeding community, and United's potential customers that United is infringing

on American's exclusive intellectual property rights." (DE 7 ¶ 22).

In its Response, United further alleges its claims for declaratory judgment arise out of

American's activities in Florida because American "purports to be the official worldwide registry

for the American Bully and conducts business in Florida under the guise that its use and control

of the American Bully" is exclusive. (DE 23 at 15) (internal citations omitted). United asserts

that American's business activities include registering dogs to Florida residents (DE 23 at 6),

employing a judge and representative who reside in Florida (DE 23 at 7), and sanctioning dog

shows in Florida (DE 23 at 7-8). United states the instant action arises out of American's alleged

business activities within Florida because "the core issues of this action pertain to whether there

3

are exclusive intellectual property rights to American Bully and its breed standards and whether [United] is infringing on those rights." (DE 23 at 9).

On July 15, 2011, American filed suit against United in the United States District Court for the Eastern District of Virginia "for certification mark infringement, trademark infringement, copyright infringement, unfair competition, fraudulent trade practices, and abuse of process." (DE 21 at 13). Also, on July 15, 2011, American filed the instant Motion for lack of personal jurisdiction. (DE 21).

With respect to the instant Motion, the following facts are undisputed: (1) American is a limited liability company organized under the laws of Virginia; (2) American's principle, and only place of business is in Spotsylvania, Virginia; (3) American does not have any offices, banks accounts, or telephone numbers in Florida; (4) American is not registered to do business in Florida; and (5) American operates a registry for dogs, including dogs belonging to the breed known as American Bully. (DE 21 at 1).

## II. Choice of Law and Legal Standard

American seeks dismissal of United's Amended Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction over American. Fed. R. Civ. P. 12(b)(2). When determining whether a court has personal jurisdiction over a defendant in a declaratory judgment for non-infringement of a trademark and certification mark pursuant to 15 U.S.C. § 1054 and § 1125 and non-infringement of a copyright pursuant to 17 U.S.C. § 501, a district court must apply regional circuit law. *See, e.g., Virgin Corp. v. Virgin Enters. Ltd.*, 393 Fed. Appx. 623 (11th Cir. 2010) (applying Eleventh Circuit law to appeal of district court's dismissal of complaint for lack of personal jurisdiction in declaratory judgment action for non-infringement of a trademark); *see also, Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir.

2010) (using Eleventh Circuit law to determine whether defendant infringed upon plaintiff's trademark), *see also, KVAR Energy Sav., Inc., v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645 (M.D. Fla. 2009) (applying Eleventh Circuit law to plaintiff's claim against defendants for certification mark infringement); *see also, Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010) (using Eleventh Circuit law to analyze plaintiff's claim against defendants for copyright infringement pursuant to 17 U.S.C. § 501).

However, the Federal Circuit often analyzes both copyright infringement and trademark infringement claims, especially in the context of declaratory actions for non-infringement, where these types of infringement claims are coupled with patent infringement cases. The Federal Circuit reviews "non-patent claims, such as [trademark infringement] claims arising under the Lanham Act, in accordance with the law of the regional circuit within which the case arose." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009) (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed.Cir.1999)). Where a regional circuit is silent on a particular issue the Federal Circuit will follow its own precedent. *See, e.g., Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 757 (Fed. Cir. 1987) (using both Federal Circuit law and regional circuit law to analyze defendant's trademark claims "[b]ecause *declaratory judgment actions involving trademarks* are *analogous to those involving patents* . . . we may also, when necessary, find guidance in the precedents of this court" (internal citations omitted)(emphasis added)). Thus, while my decision must comport with Eleventh Circuit law, where the Eleventh Circuit is silent, I will also look to the Federal Circuit and other regional circuits for guidance.

A district court's determination of whether personal jurisdiction exists consists of an analysis determining the following: (1) whether the complaint alleges sufficient facts to permit

service of process on the foreign defendant under the state's long-arm statute and (2) whether the assertion of personal jurisdiction over the defendant would violate due process. *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* (citing *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir.1999)). The plaintiff bears the burden of establishing a prima facie case that the defendant is subject to personal jurisdiction in the forum state. *Id.* A plaintiff establishes a prima facie case establishing personal jurisdiction over a non-resident defendant when he presents sufficient evidence to withstand a motion for directed verdict. *See Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009) (citing *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006)). "The defendant then must raise[ ], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Id.* (quoting *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996) (internal quotation marks omitted). If a defendant rebuts plaintiff's prima facie case that he is subject to personal jurisdiction in the forum state, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.* (citing *Sculptchair, Inc.,* 94 F.3d at 627).

### III. Discussion

*1.  Whether Florida's Long-Arm Statute Permits Service of Process*

The reach of Florida's long-arm statute is a question of Florida law; therefore, a district court must construe the statute as if it were the Florida Supreme Court. *See United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). Additionally, Florida's long-arm statute is to be strictly construed. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d

889, 891 (11th Cir. 1983). A Florida court must look to the face of the complaint to determine

whether a plaintiff alleges sufficient facts to invoke the Florida long-arm statute. *See Venetion*

*Salami, Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989).

     A. <u>Specific Jurisdiction</u>

     Pursuant to Florida Statute § 48.193 ("Section 48.193"), Florida's long-arm statute

authorizes a Florida court to exercise specific jurisdiction over:

> (1) Any person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action *arising from* the doing of any of the following acts:
>
> > (a) *Operating, conducting, engaging in, or carrying on a business* or business venture in this state or having an office[1] or agency in this state . . .

Fla. Stat. § 48.193(1)(a) (2011) (emphasis added).  Thus, before a district court can

exercise personal jurisdiction over a foreign corporate defendant, a plaintiff must show that the

defendant is "[o]perating, conducting, engaging in, or carrying on a business" in Florida. Fla.

Stat. § 48.193(1)(a) (2011).  After a plaintiff successfully demonstrates that a foreign corporate

defendant is "carrying on a business" in Florida, a plaintiff must then show that the cause of

action arises from those activities.

     The evidence presented to the Court by way of United's and American's affidavits

establishes that the bulk of American's business is conducted outside Florida. The Parties agree

that American is a foreign limited liability company that is not registered to do business in

Florida; also, American does not have any offices, banks accounts, or telephone numbers in

Florida. (DE 21 at 1). Bearing these facts in mind, I move to United's factual allegations in its

---

[1] It is undisputed that American does not have an office in Florida; thus, I will not discuss this as a possible basis for specific jurisdiction.

Amended Complaint that support its assertion that American is "carrying on a business" in Florida. United alleges American has registered 225 dogs to Florida residents since September 2010 (DE 7 ¶ 6; DE 23 at 1; 6), and American has an interactive website that solicits business to Florida residents and is accessed by Florida residents (DE 7 ¶ 6; DE 23 at 8). I will address each of these factual allegations in order.

*i. Is American operating, conducting, engaging in, or carrying on a business or business venture in this state*

I will first address whether United is carrying on a business in Florida. When determining whether a defendant is "carrying on a business" in Florida, a district court "must consider whether the sum of the defendant's collective business activities shows a general course of business activity in the state for pecuniary benefit." *See Insight Instruments, Inc., v. Advanced Visual Instruments, Inc.*, 44 F. Supp. 1269, 1271 (M.D. Fla. 1999) (holding that defendant's completion of two sales within Florida within seven years and attendance of two medical meetings within Florida are insufficient to establish defendant was carrying on a course of business in Florida).

First, United alleges that American is carrying on a business in Florida because it "has registered approximately 225 dogs to Florida residents" since September of 2010. (DE 23 at 2; DE 28 at 4).  However, American claims that in order to register a dog, an individual must download a form from American's website, fill it out, and mail it to American's office in Virginia because American "does not perform any step of the registration process in Florida." (DE 28 at 4-5).  *See* American Bully Kennel Club, http://theabkcdogs.org/registration (last visited September 27, 2011) ("All registrations will be mailed in (see registration PDF at the bottom of the page to download registration form)."). United does not provide any facts that contradict American's factual allegations.

Thus, the mere fact that American registered dogs to Florida residents is insufficient to establish American is carrying on a business in Florida because American's entire registration process occurs outside the state of Florida. *See generally, Jasper v. Zara*, 595 So. 2d 1075 (Fla. 2d DCA 1992) (defendant was not "carrying on a business" in Florida because he was neither a Florida resident nor Florida licensed; additionally, he never maintained an office, agent, or telephone listing in Florida, never solicited business in Florida, and never had any assets in Florida, his only connection to Florida was that plaintiff called him in New York to get financial advice, the parties communicated over the phone, and defendant advised plaintiff of two investment opportunities); *see also, Travel Opportunities of Fort Lauderdale, Inc., v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1998) (holding defendant is not subject to suit in Florida because plaintiff contacted defendant and entered into a contract with defendant outside Florida; moreover, the fact that defendant sold plaintiff nineteen lists over two years for about $200,000 was insufficient to qualify as "carrying on a business" in Florida when defendant had "no office, post office box, telephone, employees, bank account, or property of any kind in Florida"). Since its inception in September 2010, American has registered approximately 8,000 dogs, which means that approximately 2.8% of its registration business is derived from Florida. (DE 21 at 9).

Second, United alleges that American "provides an online forum and website that is accessed by Florida residents" and "sanction[s] and promot[es] Florida shows" on its website. (DE 23 at 11-12). United claims that American's website is accessible world-wide and "targets Florida residents by promoting and providing information and forms for registering dogs." (DE 23 at 14). However, it is uncontroverted that an individual seeking to register his dog cannot register his dog on American's website, send files to American through its website, enter into

9

contracts with American over its website, or pay fees to American on its website. (DE 21 at 9).

Additionally, an individual seeking to host a dog show cannot submit his application to use

American's certification mark or pay the host fee through American's website. United claims

American's website is interactive because it targets Florida residents; however, besides merely

supplying information about prior and upcoming shows in Florida, United fails to allege any

additional facts supporting its conclusion. (DE 23 at 14).

     In fact, all of United's factual allegations that allegedly demonstrate American "targeted"

Florida residents came from lists, which include information about American's activities

throughout the country. (*See, e.g.,* DE 23 Luis Pachecho's Affidavit- Exhibit 1 and Exhibit 2)

(claiming that American's website targets Florida residents because it lists events in Florida and

a judge and representative who both live in Florida; however, the judges and representatives list

is seven pages long and includes judges from most states, while the event list is nine pages long

and lists all of American's events throughout the country). Even viewing the facts in a light most

favorable to United, I find that based upon the facts alleged by both Parties, American's website

is passive. *See, e.g., Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1139

(S.D. Fla. 2009) (finding defendant's websites were "undoubtedly passive . . . [because the]

website pages only display contact information," an individual cannot communicate with

defendant or buy items from defendant's websites, and the "website invites potential customers

to contact [defendant] through its e-mail"); *see also, Pathman v. Grey Flannel Auctions, Inc.*,

741 F. Supp. 2d 1318, 1325 (S.D. Fla. 2010) (classifying defendant's website as a highly-

interactive website because "any Florida resident may view, inquire, place an order for and pay,

and have direct communication with website administrators"). A passive website alone is

insufficient to establish "carrying on a business" in Florida. *See, e.g., Homeway Furniture Co. of*

*Mount Airy, Inc., v. Horne*, 822 So. 2d 533, 536 (Fla. 2d DCA 2002) (finding foreign corporation was not "carrying on a business" in Florida when it merely created a website that could be viewed by Florida residents and contracted with plaintiff outside the state of Florida to ship to plaintiff's home in Florida).

In order for a district court to exercise specific jurisdiction under Section 48.193(1)(a) over a foreign corporation, a district court must consider the corporation's activities in the forum state collectively and these activities must show a general course of business activity in the state for pecuniary benefit. *See Dinsmore v. Martin Blumenthal Assocs., Inc.,* 314 So. 2d 561, 564 (Fla. 1975); *see also, April Indus., Inc. v. Levy,* 411 So. 2d 303, 305 (Fla. 3d DCA 1982). Considering that American is a Virginia LLC with no offices, employees, agents, bank accounts, telephone numbers, or Florida licenses, American's mere creation of a passive website and registration of 225 American Bully dogs, accounting for less than 3% of American's total registrations, are insufficient to constitute "carrying on a business" in Florida. Thus, I do not have the authority to exercise specific jurisdiction over American because American is not engaged in a general course of business activity in Florida for its pecuniary benefit.[2]

> *ii. Alternatively, is American "carrying on a business" through an agent*

Additionally, in its Response, United asserts that American has established an agency relationship in Florida; namely, United alleges American employs one judge and one representative who both live in Florida (DE 23 at 7) and American is affiliated with dog shows in

---

[2] Alternatively, a plaintiff has general jurisdiction over a defendant when the foreign corporation's activities are continuous and systematic. *Ranger Nationwide, Inc. v. Cook,* 519 So. 2d 1087 (Fla. 3d DCA 1988), *rev. denied sub nom., Cook v. Dewline, Inc.,* 531 So. 2d 167 (Fla. 1988). First, solely looking at the face of United's Amended Complaint, United does not even appear to allege that this Court has general jurisdiction over American. Regardless of whether United properly alleges general jurisdiction, my determination that American's activities within Florida are insufficient to constitute "carrying on a business" forecloses any possibility that American's activities are continuous and systematic. Thus, I find that this Court lacks general jurisdiction over American.

Florida that feature the American Bully breed (DE 23 at 7). A plaintiff may show that a foreign defendant is subject to specific jurisdiction if he shows that the defendant has an agent who is carrying on a business in Florida on its behalf. To support a finding of agency under Florida law, a plaintiff must show "(1) acknowledgment by the principal that the agent will act for him; (2) acceptance by the agent; and (3) control by the principal over the actions of the agent." *Virgin Corp. v. Virgin Enters. Ltd.*, 393 Fed. Appx. 623, 626 (11th Cir. 2010) (quoting *Goldschmidt v. Holman,* 571 So. 2d 422, 424 n. 5 (Fla. 1990)) (alteration to original) (affirming the district court's decision dismissing the case for lack of personal jurisdiction because "[a]lthough [plaintiff] notes that [defendant] (1) negotiates licenses with licensees; (2) monitors the use of the licenses; (3) applies for and defends service marks; and (4) polices against infringement of marks, none of this activity, nor the activity of the licensees as evidenced through screenshots of their online activity, demonstrates that the licensees are the agents of [defendant]"), *see also, Polymers, Inc. v. Ultra Flo Filtration Sys.*, Inc., 33 F. Supp. 2d 1008 (M.D. Fla. 1998) (dismissing plaintiff's action for declaratory judgment of non-infringement because even though defendant was carrying on a business in Florida through the acts of its authorized agent, who was its exclusively licensed master distributor, the declaratory judgment action did not arise out of the agency relationship and the defendant did not have sufficient minimum contacts in Florida) *disagreed with on other grounds, Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264 (11th Cir. 2002).

United alleges that American has a judge and representative who act as American's agents in Florida. (DE 23 at 7). Pursuant to Section 48.193(1)(a), "[a]ny person . . . who personally or through *an agent* does any of the acts enumerated" shall be subject to personal jurisdiction in Florida. Fla. Stat. § 48.193(1)(a) (2011) (emphasis added). The determination of whether an agency relationship exists is an issue of fact, and the plaintiff bears the burden of

12

establishing a prima facie case establishing an agency relationship. *Enic, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (citing *Product Promotions Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. Tex. 1974)).

United's sole factual allegation in support of its conclusory argument that American's judge and representative are American's agents is that American's website lists it has one judge and one representative who live in Florida. (DE 23 at 7). Viewing the facts in a light most favorable to United, I find that United fails to establish a prima facie case for an agency relationship. United fails to establish facts demonstrating either an acknowledgment by American that these alleged agents will act on American's behalf or an acceptance by the alleged agents that they would act on behalf of American. Additionally, United fails to establish that American exerts any control over its alleged agents. Indeed, American alleges that the judge and representative are neither its employees nor its agents because they are paid by the show hosts, they have no contractual relationship with American, and American only trains them. (DE 28 at 4). In fact, on American's website it has a contract for show hosts to use when they hire a judge or representative. Therefore, for the purposes of determining whether I have the authority to exercise specific jurisdiction over American, I will not consider United's allegation that the judge and representative act as American's agents.

Finally, United alleges that American "promotes and sanctions dog shows which feature American Bully dogs" in Florida. (DE 23 at 2). United alleges that if a third-party dog show host ("Host") wants to put on a show featuring the American Bully breed it has to pay a fee to American, fill out an application to be approved to host the show, hire an American judge, hire an American representative, use American's forms for participating in the show, use American's classes, set-up the show classes in a way that American dictates, and report results to American.

(DE 23 at 2-3). American alleges that its relationship with a Host is similar to the relationship between a trademark licensor and a licensee because Hosts have no legal authority to bind American and American exercises "minimal control over the" Hosts. (DE 28 at 2-3). In order to use American's certification mark, Hosts must pay American $150 and use an American judge or representative to oversee "approved show portion[s] of their events." (DE 28 at 2). American alleges that this is the sole aspect of American's business relationship with Hosts. (DE 28 at 2). American alleges it has "no involvement with any of the sub-events that may be part of a show hosts event." (DE 28 at 4).  In order to impute a Host's activities within the state of Florida to American, United must establish an agency relationship exists between American and the Hosts. See *Virgin Corp. v. Virgin Enterps. Ltd.*, 393 Fed. Appx. 623, 626 (11th Cir. 2010) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)). United fails to allege any facts establishing that American acknowledges the Hosts are its agents or that the Hosts accepted responsibility to act as American's agents. Thus, I will not consider United's allegation that American utilizes Hosts to promote and sanction dog shows featuring the American Bully breed.

   *2. Whether the assertion of personal jurisdiction over American would violate due process*

   Assuming for the purposes of this Order that I found that Section 48.193(1)(a) was applicable, I would then determine whether exercising specific jurisdiction over American would comport with due process. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 326 S. Ct. 154, 90 L. Ed. 95 (1945)) (internal quotations marks omitted). The purpose of the due process inquiry is to "give[] a degree of predictability to the legal system that allows

potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984)) (internal quotation marks omitted).

In order to determine a foreign defendant has established sufficient minimum contacts a district court must determine the following: (1) a defendant's "contacts must be related to the plaintiff's cause of action or have given rise to it;" (2) the "contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws;" and (3) a "defendant's contacts within the forum state must be such that [he] should reasonably anticipate being haled into court there." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996) (citing *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994)).

### A. Minimum Contacts

Assuming American was carrying on business in Florida, United would still fail to establish specific jurisdiction because neither its actions for declaratory judgment nor its request for injunctive relief relate to or arise out of American's activities in Florida.

> *i. American's contacts in Florida must relate to or have given rise to United's claims for declaratory judgment and request for preliminary injunction*

15

United's claims must arise out of or relate to the conduct that comprises American's contacts in Florida. "The Supreme Court has not elaborated on this requirement and the occasional difficulty in applying it has led to conflict among the circuits." *Tamburo v. Dworkin*, 601 F.3d 693, 708 (7th Cir. 2010). This is a matter of first impression because the Eleventh Circuit also never elaborated on this requirement in the context of a declaratory judgment for non-infringement of a copyright or trademark.

In a traditional claim for trademark infringement, the Eleventh Circuit held that a plaintiff's claim arose out of defendant's tortuous conduct directed at the forum state; namely, posting both plaintiff's trademarked name and a photograph of plaintiff on his website. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir 2008).[3] In a footnote, the Eleventh Circuit stated "[i]t is unclear whether [defendant's] travel to Florida and income from his management of several music groups that have performed in Florida are related to [plaintiff]'s claim for trademark infringement." *Id.* at 1285 n.3. Without addressing the issue, the Eleventh Circuit noted "that is not enough that there [is] some *similarity* between the activities that connect the defendant to the forum and the plaintiff's claim. Rather, the plaintiff's claim must 'arise out of' the defendant's contacts with the forum." *Id.* (internal citation omitted).

Additionally, the Eleventh Circuit referred to a prior case where it "rejected a similar claim that a defendant's visits to Florida for concert performances and the sale of his records in Florida were related to" plaintiff's libel suit against him. *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990)). The Eleventh Circuit concluded that if it applied the test it articulated in *Madara*, which it declined to do, the Eleventh Circuit would have found that

---

[3] In *Licciardello*, the plaintiff established a prima facie case against defendant by relying upon Florida Statute § 48.193(1)(b), alleging that defendant committed a tortious act within Florida, which is distinctly different that United's allegation that American was carrying on a business in Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir 2008).

plaintiff's "trademark infringement claim [did] not 'arise' out of [defendant]'s travel to Florida and management of groups performing here." *Id.*

Again, *Licciardello* dealt with a traditional trademark infringement case, which is distinctly different from the instant case for a declaratory judgment of non-infringement of a trademark and copyright. The only district court within the Eleventh Circuit that analyzed the arising out of requirement, in the context of a declaratory judgment for non-infringement of a patent, held that the plaintiff failed to establish a prima facie case for specific jurisdiction because it did not make "a showing that the declaratory judgment action arises out of" the defendant's business activities within the state. *Insight Instruments, Inc., v. Advanced Visual Instruments, Inc.*, 44 F. Supp. 1269, 1272 (M.D. Fla. 1999). While the instant case pertains to a declaratory judgment for non-infringement of trademark and copyright, rather than patent, the basic structure of these types of claims are similar. Therefore, I agree with the Federal Circuit's determination that "declaratory judgment actions involving trademarks are analogous to those involving patents" and look to the Federal Circuit for guidance. *Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 757 (Fed. Cir. 1987).

The Federal Circuit has squarely addressed how to analyze the second prong of the due process inquiry in the context of a declaratory judgment for non-infringement of a patent. *See Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). While the Federal Circuit's precedent is not controlling, the due process considerations of a declaratory judgment for trademark infringement or copyright infringement are similar to the due process considerations of a declaratory judgment for patent infringement.[4] The Federal Circuit has

---

[4] The other circuits are divided with respect to how to interpret the arising from or relating to inquiry between the following three approaches: (1) the proximate cause or legal relevance test; (2) the but-for test; and (3) the substantial connection or discernible relationship test. *See e.g., Massachusetts School of Law at Andover, Inc. v.*

determined that "[a]lthough the nexus necessary to satisfy the 'arise out of or related to' requirement of the due process inquiry has not been clearly delineated by the Supreme Court . . . it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Avocent Huntsville Corp. v. Alten Intern. Co., Ltd.,* 552 F.3d 1324, 1329 (Fed. Cir. 2008) (*Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed. Cir. 2001)) (omitted internal punctuation). "In the *ordinary patent infringement suit,* the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit." *Id. (citing* 35 U.S.C. § 271(a)) (emphasis added).

Therefore, in the ordinary patent infringement suit, the specific jurisdiction "inquiry is . . . easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum" because the claim "both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.* (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360 (Fed. Cir. 1998)). However, "in the context of an *action for declaratory judgment* of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff

---

*American Bar Ass'n,* 142 F.3d 26, 35 (1st Cir. 1998) (The First Circuit follows the proximate cause or legal relevance test, and stated "[w]e have approached the relatedness inquiry with slightly different emphases when the plaintiff asserts a contract claim then when she asserts a tort claim: if a contract claim, our stereotypical inquiry tends to ask whether the defendant's forum-based activities are instrumental in the formation of the contract, if a tort claim, we customarily look to whether the plaintiff has established cause in fact (i.e., the injury would not have occurred but for the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action.") (internal citations and quotation marks omitted*); see also, O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 319 n. 8 (3d Cir. 2007) (quoting *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 386 (9th Cir.1990), *rev'd on other grounds* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (stating that the Ninth Circuit applies a but-for test because in *Shute* the Ninth Circuit ruled plaintiff established minimum contacts because "[i]n the absence of Carnival's activity, the Shutes would not have taken the cruise, and Mrs. Shute's injury would not have occurred.").

relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit.'" *Id.* (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360 (Fed. Cir. 1998)) (emphasis added). This is because the purpose of filing an action for declaratory judgment of non-infringement "is 'to clear the air of infringement charges.'" *Id.* (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360 (Fed. Cir. 1998)). An action for declaratory judgment of non-infringement "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead *arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents* in suit." *Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (emphasis added). Thus, a district court must inquire, when determining if it has specific jurisdiction over a defendant in a declaratory judgment for non-infringement, "to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* at 1332-33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1363 (Fed. Cir. 2006))

A district court is permitted to look beyond the "arises out of" inquiry and find personal jurisdiction where "other activities" in some identifiable way "relate[] to" enforcement of those patents in the forum. *Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008). "In many patent declaratory judgment actions, the alleged injury arises out of the threat of [an] infringement" law suit, which is usually expressed in a cease and desist letter sent by the patentee. *Id.* at 1333. If a defendant is engaged in "other activities" in conjunction with sending cease and desist letters, a district court may find sufficient grounds to meet the

19

"relate[s] to" requirement for specific jurisdiction. *Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

Types of "other activities" include entering into an exclusive license agreement with a resident of the forum state, initiating a patent infringement case in the forum state, or entering into a contract that imposes upon a resident of the forum state an obligation to defend against patent infringement in the forum state. *See, e.g., Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[T]he defendant is subject to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum state licensee if the license agreement, for example, requires the defendant-licensor, and grants the licensee the right, to litigate infringement claim."); *see also, Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (finding a court has specific jurisdiction over a defendant who entered into an exclusive licensing agreement with plaintiff).

An additional type of "other activity" is extra-judicial patent enforcement, which occurs when a defendant enlists a third-party to help defendant engage in patent enforcement activities within the forum state. *See Campbell Pet Co. v. Miale,* 542 F.3d 879, 886 (Fed. Cir. 2008). In *Campbell*, Campbell Pet Company ("Campbell") filed suit in the Western District of Washington seeking a declaration of non-infringement with respect to two patents owned by Theresa Miale ("Miale"), who wholly owned defendant corporation, Ty-Lift Enterprises ("Ty-Lift"). *Id.* at 882. Miale, on behalf of Ty-Lift, and Campbell's employees attended a trade-show in Washington where both companies set up booths. *Id.* at 881. Miale saw Campbell's booth and accused Campbell's employees of infringing on her patents. *Id.* at 881. Campbell's employees alleged Miale ordered the owner of the trade show to remove Campbell's display and "bad-mouth[ed]"

Campbell and its products to people attending the convention. *Id.* at 882. The district court

dismissed Campbell's complaint because asserting personal jurisdiction over defendants would

not comport with due process because there was "no nexus between . . . [Ty-Lift]'s marketing

and sale of its products in the forum state and the subject matter of . . . [Campbell]'s claims,

which concerned only the patent's validity." *Id.* at 883.

The Federal Circuit reversed the district court's dismissal of Campbell's complaint and

held that Miale and Ty-Lift were subject to personal jurisdiction in Washington because

Campbell's action for declaratory judgment of non-infringement arose out of Ty-Lift's mailing

of cease and desist letters to Washington and Miale's extra-judicial patent enforcement actions at

the convention in Washington. *Id.* at 886-88. Subsequent Federal Circuit cases addressing

*Campbell* limit its holding to extra-judicial patent enforcement actions that take place within the

forum state. *See Radio Sys., Corp., v. Accession, Inc.,* 638 F.3d 785, 791 (Fed. Cir. 2011) (In

*Campbell,* "we held that the district court had jurisdiction over a patentee in a declaratory

judgment action based on the patentee's conduct in interfering with the plaintiff's business at a

trade convention in the forum state."); *Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.,* 552

F.3d 1324, 1335 n.3 (Fed. Cir. 2008) ("The dissent's comparison of this case to *Campbell Pet* is,

with all due respect, inapt. The patentee's extra-judicial enforcement activities in *Campbell Pet*

were directed at the forum state, where the trade show was being held."); *Autogenics, Inc. v.*

*Oxford Gene Technology Ltd.,* 566 F.3d 1012, 1019, (Fed. Cir. 2009) ("holding that attempts at

'extra-judicial patent enforcement' by harming plaintiff's business activities in forum state is a

sufficient additional factor to justify the exercise of personal jurisdiction").

Therefore, in an action for declaratory judgment for non-infringement a court must focus

on a defendant's enforcement activities within the forum state and not look to "[w]hat the

patentee [defendant] makes, uses, offers to sell, sells, or imports." *Avocent Hunstville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008) (quoting *Leatherman Tool Grp. Inc. v. Cooper Indus. Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997)). Even where "the defendant has successfully licensed the patent in the forum state . . . to multiple non-exclusive licensees" the request for a declaration of non-infringement does not arise out of a defendant's activities where the defendant "does not . . . exercise control over the licensees' sales activities and . . . has no dealings with those licensees beyond the receipt of royalty income." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (summarizing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)); *see also, Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1357-58 (Fed. Cir. 1998) (holding that a court lacked specific jurisdiction over a foreign defendant, even when the defendant sent the plaintiff a series of cease and desist letters alleging infringement, offered plaintiff the option to enter into a non-exclusive license with defendant, and had thirty-four non-exclusive licensees, "six of which sold products in [the forum state] or possessed a . . . business registration" in the forum state). Even though these cases involve declaratory judgment for non-infringement of a patent, I find the Federal Circuit's analysis equally applicable to cases involving a declaratory judgment for non-infringement of a trademark or copyright.

Against this backdrop, I will first determine whether United's request for declaration of non-infringement of a trademark or copyright arises from American's activities in Florida. United moves this Court to find that it has the right to use the term American Bully because American does not have a valid copyright, intellectual property right, or exclusive right to use

the term American Bully.[5]  (DE 7 ¶ 27). Looking at United's Response, none of the alleged activities by American establish this Court's authority to exercise specific jurisdiction over American because the activities do not involve enforcement of American's intellectual property rights. United solely focuses on the following activities as a basis for personal jurisdiction: (1) American's registration of dogs belonging to Florida residents (DE 23 at 6); (2) American's listing one judge and one representative on its website who reside in Florida (DE 23 at 7); (3) American's relationships with show hosts[6]  (DE 23 at 8); and American's website, which is accessed by Florida residents (DE 23 at 8).

Viewing United's Amended Complaint in a light most favorable to it, United's request for declaratory judgment of non-infringement neither arises out of nor relates to American's alleged activities in Florida. United fails to allege any activity, as a basis for specific jurisdiction for its request for a declaration of non-infringement, where American enforced its mark, trademark, or copyright. Thus, even if I had found that American was "carrying on a business" in

---

[5] Specifically, United seeks a declaratory judgment under Florida law and federal law that finds the following:

> (a) that the term American Bully is a descriptive term widely recognized as describing a breed of dog; (b) that American does not have a common law trademark or certification mark to the term American Bully; (c) that American does not have a federal trademark right to the term American Bully; (d) that American does not have any exclusive or intellectual property rights to the term American Bully; (e) that American does not have any exclusive rights to register dogs as belonging to the American Bully breed; (f) that United is entitled to use the term American Bully on its website and freely as otherwise desired in its business; (g) that United is entitled to register dogs as belonging to the American Bully breed; (h) that American does not have a protectable copyright on the breed standards for the American Bully breed; (i) that United did not copy the breed standards for the American Bully from American's breed standards; (k) that United's use of the American Bully breed standards are facts which are commonly known and used in the industry, and do not constitute copyright infringement; and (k) that American cannot interfere with United's business on the basis of American's alleged intellectual property rights.

> (DE 7 ¶¶ 27; 47).

[6] Even if United had established that the judge, representative, or Host were American's agents, United did not establish that these individuals have the authority to enforce American's intellectual property rights; thus, the declaratory judgment does not arise out of the judge's, representative's, or Host's activities in the forum state.

Florida, United fails to establish in its Amended Complaint or its Response either of its requests for declaration of non-infringement arise from American's activities in Florida. Thus, I find the instant action for declaratory judgment does not arise out of American's activities in Florida.

Next, I will determine whether United's claim for injunctive relief arises out of American's activities in Florida. United alleges that the Court has specific jurisdiction over American because American "has taken overt actions to interfere with [United's] business activities in Florida." (DE 23 at 10). Specifically, United moves this Court to enjoin American from "spreading false and derogatory information to the public, the dog breeding community, and United's potential customers." (DE 7 ¶ 57). Also, United claims that American improperly interfered with its business by "causing its website to be shut down for alleged" trademark and copyright violations. (DE 7 ¶ 58). United in its Response states that its request for injunctive relief arises out of American's activities in Florida; however, Plaintiff fails to allege any facts to show that the aforementioned acts occurred in Florida. (DE 23 at 10).

As previously mentioned, the Federal Circuit limited *Campbell's* holding to apply solely to a defendant's extra-judicial patent enforcement actions occurring within the forum state. Within the last five months, the Federal Circuit addressed whether *Campbell's* holding extended to extra-judicial enforcement actions conducted outside the forum state where the action had effects within the forum state. *See Radio Sys., Corp., v. Accession, Inc.,* 638 F.3d 785 (Fed. Cir. 2011). In *Radio Systems,* the Federal Circuit held that defendant's contacts in the forum state were insufficient to give rise to specific jurisdiction in a declaratory action for non-infringement even though defendant sent cease and desist letters to plaintiff, defendant had prior contacts with competitor in the forum state, defendant contacted the Patent Trademark Office ("PTO") about plaintiff's alleged infringement, and the PTO withdrew plaintiff's notice of allowance. *Id.* at 791-

93. The plaintiff argued that *Bancroft*,[7] a Ninth Circuit opinion discussed in *Campbell*, supports "its argument that [defendant's] contacts with the PTO support personal jurisdiction in the" forum state because those actions had an effect in the forum state, despite the fact that the conversation with the PTO occurred outside the forum state. *Id.* at 792. However, the Federal Circuit ruled plaintiff's "argument runs afoul of our decision in *Avocent*," which "made clear . . . that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum." *Id.*

In *Licciardello* the Eleventh Circuit held that plaintiff's claim for trademark infringement arose out of defendant's use of plaintiff's trademarked name and photograph on his website, which constituted an intentional tort. *Licciardello*, 544 F.3d at 1287-88. This holding does not apply to the instant case because United asserted personal jurisdiction over American solely based upon Florida Statute § 48.193(1)(a). Additionally, this case is distinguishable from *Licciardello* because the instant case is a declaratory action for non-infringement of a trademark and copyright and it does not appear American posted tortious information about United on its website. Finally, I rely upon Federal Circuit case law, which appears to comport with the dicta found in footnote three of *Licciardello*.

---

[7] In *Bancroft*, Augusta National, Inc., ("ANI"), held "several federally registered trademarks for the mark 'Master' and operate[d] a website at the domain name 'masters.org,'" while Bancroft & Masters, Inc., ("BMI") registered the domain name masters.com. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1084 (9th Cir. 2000). ANI sent a cease and desist letter to BMI demanding BMI cease using its domain name; additionally, ANI sent a letter to Network Solutions, Inc., ("NSI") who at the time was the "sole registrar of domain names in the United States." *Id.* at 1084-85. ANI's letter to NSI invoked NSI's dispute resolution process, which gave BMI the following "three options: (1) voluntarily transfer the masters.com domain name to ANI; (2) allow the domain name to be placed 'on hold,' meaning that it could not be used by either party; or (3) obtain a declaratory judgment establishing its right to use the masters.com domain name." *Id.* at 1085. BMI decided to file an action for declaratory judgment in California alleging trademark infringement, and NSI challenged the court's authority to exercise personal jurisdiction over it. *Id.* The district court dismissed BMI's complaint because it found it lacked specific and general jurisdiction over ANI. *Id.* at 1085. The Ninth Circuit solely focused on whether specific jurisdiction would violate due process because California's long-arm statute "permits the exercise of personal jurisdiction to the full extent permitted by due process." *Id.* at 1086. The Ninth Circuit reversed the district court's decision to dismiss BMI's complaint because ANI's decision to send a letter to NSI constituted "purposeful availment" because the letter was aimed at interrupting BMI's activities in California. *Id.* at 1086-87.

Applying this legal analysis to the instant case, United's allegation that American contacted its website provider is the only aspect of United's specific jurisdiction analysis that shows any action on behalf of American to enforce its mark, trademark, or copyright; however, United solely offers this activity as a ground to support its request for injunctive relief. (DE 7 ¶ 17). Moreover, even though American allegedly contacted United's website provider in an attempt to shutdown United's website (DE 7 ¶ 22), United fails to allege facts establishing where the website provider was located or where the alleged communications to the website provider occurred.[8] Thus, even if I found that American carried on a business in Florida, United's request for injunctive relief fails to establish that American's allegedly improper communications to United's website provider occurred in Florida.

United fails to establish a prima facie case for specific jurisdiction because United did not establish that American's contacts are related to the plaintiff's cause of action or have given rise to it. Therefore, I find that exercising specific jurisdiction over American would not comport with due process.

B.  Would the assertion of personal jurisdiction be reasonable and fair

If a district court finds a defendant established minimum contacts with the forum state because he purposefully directed his activities at the forum state, then the court may consider whether "in light of other factors . . . the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320) (internal quotations omitted).

---

[8] In Luis Pacheco's sworn statement he fails to provide any of these facts. (DE 23 Exhibit A). Mr. Pacheco merely recites the statement in United's Amended Complaint that American reached out to United's website provider, the site was temporarily disabled, and that American spoke with the public about United's violation of American's intellectual property rights. (DE 23 Exhibit A ¶ 15).

26

A district court may weigh the following relevant factors: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) any "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477 (citing to *Keeton,* 465 U.S. at 780). However, "where a defendant who purposefully . . . directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Assuming Florida's long-arm statute applied to the instant case and exercising personal jurisdiction over American comported with due process, I would still dismiss United's Amended Complaint because American demonstrates a compelling case that other considerations render jurisdiction in Florida unreasonable.

I find that the burden on American to litigate this case in Florida would be substantial due to its limited contacts in Florida. Considering American's limited contacts, Florida's interest in adjudicating this dispute is minimal. Despite the fact that it may be more convenient for United to litigate the case in Florida, this inconvenience is outweighed by American's burden to litigate here. Moreover, while United has an interest in obtaining convenient and effective relief, on July 15, 2011, American filed suit against United in the United States District Court for the Eastern District of Virginia for certification mark infringement, trademark infringement, copyright infringement, unfair competition, fraudulent trade practices, and abuse of process." (DE 21 at 13). Therefore, while the instant action would provide United some relief with respect to the

27

intellectual property right infringement claims, United may still be forced to participate in the lawsuit in Virginia to resolve the other claims. Thus, the interstate judicial system's interest in obtaining the most efficient resolution of controversies weighs in favor of dismissing the instant case. Finally, the last factor does not weigh in favor of either party because both Virginia and Florida have an interest in resolving the instant dispute.

## IV. Conclusion

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (DE 21) is **GRANTED.** Plaintiff's Amended Complaint (DE 7) is **DISMISSED WITH PREJUDICE.** All pending motions are **DENIED AS MOOT,** and the Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this _7_ day of October, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record